[No. B011106. Second Dist., Div. Five. Oct. 7, 1985.]

SANDRA READ, Plaintiff and Appellant, v.
CITY OF LYNWOOD et al., Defendants and Respondents.

**COUNSEL**

Joseph Posner and Michael P. Calof for Plaintiff and Appellant.

Stradling, Yocca, Carlson & Rauth, Paul L. Gale and Randall J. Sherman for Defendants and Respondents.

**OPINION**

**HASTINGS, J.**—Plaintiff/appellant Sandra Read (appellant) appeals the dismissal of her suit against defendants/respondents City of Lynwood (the

City), Charles Gomez (the city manager) and E. L. Morris (the mayor). The dismissal followed the sustaining of respondents' demurrer to the first amended complaint, the operative one on appeal.[1]

FACTS:

Appellant was hired by the City as development division manager in September 1981. Her supervisor was the city manager. As required by the City code, appellant had a six-month probationary period which she passed with favorable ratings.

On July 1, 1983, appellant accepted an appointment as community development director for the City. Because this was a new position, appellant was required to complete another six-month probationary period. Under the terms of the City code section 24-56, should she fail to pass her probation, she would return to her former position as development division manager, provided it was extant. On December 12, 1983, the city council voted to eliminate the position of development division manager by a vote of three to two. Appellant alleges that City code section 24-67 requires a four-to-one vote to eliminate a position; therefore, this vote was null and void. On December 30, 1983, appellant was informed that she had failed to pass her probationary period as community development director, and since her former position with the City had been eliminated, she would no longer be employed by the City.

This sequence of events seems straightforward enough. The plot is thickened, however, by the accusations and allegations made by appellant in her subsequent suit. Appellant alleges that during her tenure as development division manager she "became aware of a number of suspected criminal activities by City employees, especially by [the city manager] and other defalcations on his part." (First amended complaint, par. 8.) She alleges that in the spring of 1983, the City was seeking bids from developers for a City project; the city manager and the mayor were "pushing for the appointment" of a certain developer; appellant had heard that this developer had earlier attempted to bribe a City employee; she believed this developer to be the least qualified for the project and his appointment to be against the best interests of the City; she made her objections well known. Appellant further alleges that in 1982 or 1983 she was informed that City employees were performing work for the city manager at his home on City time. In addition, she claims the city manager frequently used erratic, volatile and unpredictable methods of management, including undermining the authority

---

[1] A demurrer to the initial complaint was sustained, and appellant was granted 60 days to amend.

of those in inferior positions to him. Appellant met with the mayor and related her concerns and misgivings regarding the city manager's management style; she also voiced her opposition to appointment of the developer.[2] Appellant alleges the elimination of her former position and her subsequent discharge were in retaliation for this meeting with the mayor.

Appellant sued for wrongful discharge and breach of covenant of good faith and fair dealing, both against the City; for intentional infliction of emotional distress against the City, the city manager and the mayor; and for intentional interference with employment relationship against the city manager and the mayor.[3] Respondents demurred, arguing that all causes of action were barred by the doctrine of discretionary immunity (Gov. Code, § 820.2)[4] in that termination of a probationary employee is well within respondents' statutorily granted discretion. They also asserted that appellant's allegations lacked the requisite elements for breach of covenant of good faith and fair dealing and for intentional infliction of emotional distress. As to the last cause of action, respondents averred that the city manager and the mayor were absolutely immune. Appellant's opposition to the demurrer focused primarily on public policy considerations. She argued that California's strong public policy against bribery and corruption as well as the policy of protecting from retaliation those who exercise their constitutional rights mandated the overruling of the demurrer.

The court disagreed. It's minute order dated December 20, 1984, in pertinent part, held: "Demurrer sustained without leave to amend. [¶] 1. Court does not consider extraneous matters. [¶] 2. Plaintiff has failed to overcome the immunity issues. [¶] 3. There is no violation of public policy. [¶] 4. City Code Sect. 24-67, City Council may eliminate unoccupied positions by 3-2 vote."

On appeal, appellant reasserts the arguments raised below.[5] Respondents counter that since their actions were wholly within their discretion, they are immune. They agree that a longstanding public policy against bribery and malfeasance in office exists but argue that appellant's complaint fails to

---

[2]The pleadings do not reveal when appellant met with the mayor. It appears to have been prior to her appointment as community development director.

[3]Before filing suit, appellant complied with the requirements of the government tort claims statute.

[4]Government Code section 820.2 provides, "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

[5]In her opening brief, appellant sets forth arguments based on Labor Code section 1102.5, section 1104 and section 1105. These were not asserted to the trial court and cannot be raised for the first time on appeal.

allege that either the city manager or the mayor participated in such bribery. Moreover, appellant's assertion that she heard City employees were working at the city manager's home was merely an allegation that she heard something NOT that the "illegal" work had, in fact, occurred.

DISCUSSION

■ A demurrer is treated as admitting the truthfulness of properly pleaded factual allegations of the complaint but not contentions, deductions or conclusions of fact or law. (*Porten* v. *University of San Francisco* (1976) 64 Cal.App.3d 825, 827 [134 Cal.Rptr. 839].) ■ On appeal, we make an independent judgment regarding the sufficiency of the facts pleaded in the complaint. (*Miller* v. *Bakersfield News-Bulletin, Inc.* (1975) 44 Cal.App.3d 899, 901 [119 Cal.Rptr. 92].) ■ We do so below and conclude that respondents' demurrer was improperly sustained and reverse the judgment ordering dismissal of the suit.

Respondents are correct when they assert that Government Code section 820.2 grants them immunity from liability for any injury resulting from the exercise of their statutorily granted discretion. This immunity extends to the public employee's employer (Gov. Code, § 815.2(b)). City code section 24-56, in pertinent part, provides, "The appointing authority may dismiss the probationary employee at any time, with or without cause, during the probationary period. Such dismissal shall not be subject to review or appeal." ■ Moreover, the courts have long held that the decision to terminate a probationary employee is within the employer's discretion. (*Lubey* v. *City and County of San Francisco* (1979) 98 Cal.App.3d 340, 345-346 [159 Cal.Rptr. 440].) ■ When appellant assumed the new position of community development director, she once again became a probationary employee. Her dismissal before the end of the six-month probationary period is allowed by both Government Code section 820.2 and City code section 24-56. Problems arise, however, when a public body or official acts outside the limits imposed by the statute granting it discretionary authority.

Appellant argues that under the provisions of City code section 24-56 she should have been allowed to return to her former position as development division manager. This section, in pertinent part, provides: "An employee dismissed from a probationary appointment who, immediately prior to receiving such appointment, held appointment to another position . . ., shall be returned to the previously held position unless dismissed for cause." She urges that this section applies because the City council's vote to eliminate this position by a three-to-two vote was a violation of City code section 24-67. It provides: "Whenever in the discretion of a four-fifths majority of the council it becomes necessary in the interest of economy or because the

necessity for the position or employment involved no longer exists, to abolish a certain position or employment in the classified service *and lay-off, demote, or transfer the employee holding such position or employment,* the council may take the necessary actions without filing statement of reasons and without the right of appeal." (Italics added.) As can be seen from the italicized phrase, the four-fifths majority is required when the position to be eliminated is filled by an employee, and the vote to eliminate that position would require that employee to be laid off, demoted or transferred. At first glance, it appears that this was not the case here. Respondents argue that when appellant assumed the new position, the former one became and remained vacant until the City council voted to eliminate it; and in such circumstances, a simple majority of the City council suffices. The lower court reached this conclusion. We agree that such an analysis is consistent with the statute but conclude that the statutory four-fifths requirement may still have been applicable to this case. Therein lies the complaint's articulation of a cause of action.

Paragraphs 10 and 11 of appellant's complaint allege that the sole reason her former position was eliminated was to insure she would have to leave city employment. It is in this allegation, though somewhat inartfully pleaded, that we find the complaint identifies a possibility that the council acted beyond the scope of its statutorily granted authority and in such a way as to give rise to a cause of action for wrongful discharge. The council's vote to eliminate this position occurred just two and one-half weeks prior to the expiration of appellant's probationary period. Should she establish at trial that the council eliminated this position to prevent her from assuming her former position, it would follow that a four-fifths majority would have been required. The City code mandates the four-fifths majority when the elimination of a position precipitates the termination, demotion or transfer of an employee. Knowing that this position was tantamount to being filled, the council, through this maneuver, cannot be allowed to circumvent the requirements of the code. In such a situation a three-fifths vote would violate the City code.

 As to appellant's other allegations, we conclude the court was correct in finding they failed to state a cause of action. Obviously, California has a strong interest in guarding against such activity. No statute or case protects a public official who abuses the public trust. Respondents do not claim that protection against such allegations exists. It is the sufficiency of the facts alleging this misconduct that the court found lacking. After a close perusal of the complaint, we agree.

 The doctrine of wrongful discharge holds that "when an employer's discharge of an employee violates fundamental principles of public policy,

the discharged employee may maintain a tort action." (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839, 610 P.2d 1330].) More recently, another division of this court has held that the public policy violation must have statutory support. (*Tyco Industries* v. *Superior Court* (1985) 164 Cal.App.3d 148, 159 [211 Cal.Rptr. 540].) ▮ In an attempt to plead wrongful discharge, appellant's complaint lists the Penal Code prohibitions against bribery (Pen. Code, § 67), acceptance of gratuities (Pen. Code, § 70), embezzlement of public monies and falsifications of public records (Pen. Code, § 424); it also cites Government Code sections barring conflict of interests (Gov. Code, §§ 1090, 1097, 8920), corrupt misconduct in office (Gov. Code, § 3060), and commission of certain crimes while acting in an official capacity (Gov. Code, § 1026). No one challenges the existence of these statutes. However, we conclude they have no applicability to the factual allegations contained in appellant's complaint.

*The attempted bribery.* Appellant's complaint does not connect the city manager or the mayor to the alleged offer of bribery. She alleges only that she heard the developer had at one time attempted to bribe a City employee. Nowhere is it alleged that the city manager or mayor participated in any way in the bribery attempt or that the developer was bribing or attempting to bribe them. Appellant's "hearing" of an attempt proves nothing against anyone; nor does the fact that the city manager and mayor favored appointment of this developer. Appellant had every right to oppose the appointment of this developer and to make her opposition known. However, appellant forgets that as a probationary employee she can be fired for any reason and fails to identify a public policy supported by statute which prevents the termination of a probationary employee for opposing a decision made by her bosses.

*The work by City employees at the city manager's home.* Again, appellant offers only contentions not factual allegations of this misconduct. She alleges that she received "some information to the effect that" City employees were working on the city manager's home on City time. Receipt of information does not constitute proof of the misconduct alleged. Again, appellant fails to specify which public policy is violated by the dismissal of a probationary employee for passing along vague information heard from an unidentified source.

*The city manager's methods of management.* Appellant alleges that the city manager "used erratic, volatile and unpredictable methods of management, with the result that chaos among City departments and employees resulted." What this amounts to is an admission that she did not like the city manager's management approach. Such is her prerogative. However, nowhere does she plead that any statute or public policy prevents termina-

tion of a probationary employee who voices his or her dissatisfaction with a superior's management style.

Appellant's factual allegations do not support the contention that her termination was a violation of the public policy against bribery, corruption, etc. However, after a liberal construction of the pleadings (Code Civ. Proc., § 452), we do find that a cause of action is stated for wrongful discharge, on the theory that the council violated an implied covenant of good faith when it voted by three to two to eliminate appellant's former position solely to insure she could no longer work for the City, thereby violating City code section 24-67. In all other respects the demurrer was properly sustained.

The order of dismissal is reversed for further proceedings consistent with this opinion. Costs on appeal are awarded to appellant.

Feinerman, P. J., and Ashby, J., concurred.