[No. B077373. Second Dist., Div. Five. Mar. 14, 1995.]

LELAND R. HILL, Plaintiff and Appellant, v.
THE CITY OF LONG BEACH et al., Defendants and Appellants.

**COUNSEL**

Mathews & Evans, Charles Theodore Mathews, William D. Evans and Eileen M. O'Hare for Plaintiff and Appellant.

Adams, Duque & Hazeltine, Richard R. Terzian and Remy Kessler for Defendants and Appellants.

**OPINION**

**GODOY PEREZ, J.**—The City of Long Beach, the Long Beach Harbor Department, and the Long Beach Board of Harbor Commissioners (collectively the City) appeal a judgment entered after a jury trial ordering the City to pay $913,425 in damages to Leland R. Hill for breach of contract. Leland R. Hill cross-appeals the sustaining of the demurrers of the City and the individual defendants to his noncontract causes of action. For the reasons discussed below, we reverse the judgment against the City and direct the trial court to enter judgment for the City as to Hill's contract causes of action. Further, we dismiss Hill's cross-appeal without reaching its merits.

### FACTS AND PROCEDURAL HISTORY

Because this appeal comes to us after judgment in Hill's favor, we must view the evidence in the light most favorable to Hill. We must not reweigh the evidence, but rather must defer to the jury's factual findings if there is any substantial evidence to support them. (*Hauter* v. *Zogarts* (1975) 14 Cal.3d 104, 111 [120 Cal.Rptr. 681, 534 P.2d 377, 74 A.L.R.3d 1282] ["appellate court is bound to view the evidence in the light most favorable to the party securing the verdict"].) However, we independently review all questions of law, and are not bound by the trial court's rulings in that regard. (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721] ["We also conduct independent review of the trial court's determination of questions of law. We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale."].) With these principles in mind, we review the facts in this case.

In 1977, Hill was hired by the Long Beach Harbor Department as an environmental specialist. Under the City's two-tier civil service system of "classified" and "unclassified" employees, environmental specialist was a classified position, meaning Hill could be terminated only for good cause.

Hill was a highly valued employee, and starting in 1979 his superiors rewarded his ability and effort with a succession of pay raises and promotions into various unclassified management positions.[1]

Hill's rights under the City's civil service system changed when he became an unclassified employee. No one disputes one of the changes was he gained the right, if removed from an unclassified position, to revert to the classified position he had held before becoming unclassified.

In February 1989, Hill was promoted to the unclassified position of managing director for planning and engineering in the harbor department. He was one of three managing directors who served directly under the executive director of the harbor department.

In July 1991, newly appointed Executive Director Dillenbeck proposed, and the commission approved, a reorganization of the harbor department's management structure. The three managing director positions were abolished and replaced with the position of one assistant executive director, which was filled by Managing Director Brown. The reorganization thus left Hill without a management position in the harbor department.

Hill's employment status after the reorganization is disputed. He contends he was fired. The City argues he was merely demoted. Regardless of whether Hill was told he was fired,[2] our review of the record shows he continued to work and draw his managing director salary for two months after the reorganization, and then drew on his accrued vacation pay for one month. At

---

[1]At each promotion, a one-page document known as a "P-1" was placed into Hill's personnel file identifying his new position and salary. The P-1's were silent, however, as to any other terms of his employment, such as job duties, nonsalary benefits, and whether he could be terminated only for good cause. Hill contends the P-1's constituted employment contracts. Without deciding that issue, we note Hill does not claim the P-1's establish he can be terminated only for cause, which is the dispositive issue in this appeal. Hence, whatever the legal nature of the P-1's, they are irrelevant. What is disputed, however, and the central issue on appeal, is whether Hill held his unclassified position at the City's pleasure and could be removed without good cause, or whether, like a classified employee, good cause was required.

[2]In support of his contention he was terminated, Hill points to a conversation in which Dillenbeck told Hill he was being fired. He also points to a July 1991 memo by Dillenbeck which recommended Hill be given two months' severance pay and offered the services of an executive placement firm. Regardless of Dillenbeck's intentions and what he said to Hill, the undisputed facts are Hill never left the City's employment.

the end of that three-month period, he exercised his right to revert to his last classified position, which was environmental specialist, and remained in that position until trial. His employment by the City was thus never interrupted or terminated.[3]

In November 1991, Hill filed his complaint against the City of Long Beach, the Long Beach Harbor Department, the Long Beach Board of Harbor Commissioners, Steven Dillenbeck, Ernest Kell, Joel Friedland, David Hauser, Alex Bellehumeur, C. Robert Langslet, and George Talin.[4] The complaint alleged contract, tort, and civil rights causes of action.

The defendants filed a number of demurrers to the complaint in its original and amended versions, the details of which are unnecessary to our analysis. The end result of the demurrers was that all noncontract causes of action against the City were dismissed,[5] and all causes of action against the individual defendants were dismissed.[6] Thus, Hill and the City went to trial on the fourth amended complaint alleging two contract causes of action— straight breach of contract, and breach of the implied covenant of good faith and fair dealing.

In April 1993, the case was tried before a jury. After hearing all the evidence, the jury found the City's removal of Hill from the position of managing director was without good cause and thus in breach of contract and the implied covenant of good faith and fair dealing. The jury awarded him $913,425.00 in damages.

The City filed a timely appeal from that judgment.

---

[3]While Hill complains he was offered his former environmental specialist position only after he hired a lawyer and filed a claim under the California Tort Claims Act, the above facts establish that the City was, at most, tardy in honoring its obligations to Hill under its civil service system. That the jury found Hill had been terminated and awarded him almost $1 million in spite of this undisputed evidence is reason enough to reverse the judgment for lack of sufficient evidence.

[4]Hill sued the named individuals both as individuals and in their official capacities as members of the board of commissioners (Friedland, Hauser, Bellehumeur, Langslet, and Talin), mayor of Long Beach (Kell), and executive director of the harbor department (Dillenbeck).

[5]These causes of action were wrongful termination in breach of public policy, conspiracy to wrongfully terminate in breach of public policy, wrongful demotion in breach of public policy, fraud and deceit, defamation, intentional infliction of emotional distress, violation of civil rights, and negligence.

[6]With two exceptions, Hill alleged the same causes of action against the individual defendants that he alleged against the City. The exceptions were he did not allege his cause of action for breach of the implied covenant of good faith and fair dealing against any individual, but he did allege a cause of action for inducement of breach of contract against Dillenbeck only.

THE CITY'S APPEAL OF JUDGMENT FOR HILL

I.

■ In California, the terms and conditions of public employment are determined by law, not contract. As our Supreme Court stated in *Miller* v. *State of California* (1977) 18 Cal.3d 808 [135 Cal.Rptr. 386, 557 P.2d 970]: "[I]t is well settled in California that public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law. [Citations.]" (*Id.* at pp. 813-814.) Thus, as a matter of law, Hill was not entitled to contract remedies against the City for his removal from the position of managing director.[7] His remedies, if any, were confined to those provided by statute or ordinance.

Trying to distinguish *Miller*, Hill claims it applies only to civil service employees and he was not such an employee.[8] Hill, however, misreads *Miller* in two ways.

First, the court's statement is phrased as a general principle of law. Nothing in its language suggests it is limited to civil service employees.

Second, the very next sentence in *Miller* after the one we cite above signals the court considered, and rejected, any distinction between civil service and noncivil service government employees: "*Nor* is any vested contractual right conferred on the public employee because he occupies a civil service position since it is equally well settled that '[t]he terms and conditions of civil service employment are fixed by statute and not by contract.' [Citations.]" (18 Cal.3d at p. 814, italics added.) The juxtaposition of these two statement of law by the court—the first more general, the

---

[7]The fact that the City charter allows the City to enter into contracts for goods and services, and that such services can include a person's labor, does not mean Hill had a contract. First of all, a fair reading of the charter provision cited by Hill shows it relates to the types of contracts the City would let for the services of an independent contractor, not for the services of a permanent city employee. But even if this provision did apply to permanent city employees, Hill's purported employment contract violates the provision's limitation to contracts for less than $50,000 and a contract contrary to statute is unenforceable. (*Miller* v. *State of California, supra,* 18 Cal.3d at p. 814 [" '[S]tatutory provisions controlling the terms and conditions of civil service employment cannot be circumvented by purported contracts in conflict therewith.' . . ."].)

[8]The basis of Hill's claim he was not part of the City's civil service system is not clear. The evidence indicated the City's employment scheme is comprehensive and covered Hill. In any event, Hill's contention is belied by the fact that he exercised his right to revert under the City's civil service system to his last classified position of environmental specialist. If he had not been part of the civil service system, he would have had no right to revert.

second more specific—joined by the word "Nor," shows the court intended its first pronouncement to apply to all government employees without exception. If the court had intended, as Hill argues, that the principles it was enunciating were to apply only to civil service employees, its first sentence would have been surplusage. We, of course, read our Supreme Court's opinions so as to avoid surplusage, and therefore Hill's interpretation of *Miller* must be rejected. (See *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323] [in interpreting statutes, "[a] construction making some words surplusage is to be avoided"]; *Brewer* v. *Patel* (1993) 20 Cal.App.4th 1017, 1021 [25 Cal.Rptr.2d 65] [in interpreting regulations, "[t]he fundamental rule of interpretation is to ascertain the intent of the agency issuing the regulation so as to effectuate the purpose of the law. [Citation.] To determine that intent, . . . [we must] avoid[] an interpretation which renders any language mere surplusage."].)

Hill further attempts to escape *Miller*'s ruling by citing a number of cases ostensibly supporting his contention that the terms and conditions of public employment in a charter city with a civil service system[9] can be defined by contract. None of these cases is apposite.

Of the cases Hill cites, *Walker* v. *Northern San Diego County Hospital Dist.* (1982) 135 Cal.App.3d 896 [185 Cal.Rptr. 617], comes closest to supporting his position. *Walker*'s precise holding was that it was a factual question for the jury, as opposed to a legal question for the judge, whether a public hospital had promised an employee she would be fired only for good cause. (*Id.* at p. 905.) *Walker*'s significance here is that the court was willing to submit such a question to a jury even though a statute made the employee an at-will employee. (*Id.* at p. 900.) Hill presumably hopes we will similarly disregard controlling legal authority,[10] and decide it is a jury question whether Hill was terminable only for good cause. However, we decline to adopt *Walker*'s reasoning, given that it ignores the law and does not even attempt to reconcile its holding with *Miller*.

Hill also cites *Read* v. *City of Lynwood* (1985) 173 Cal.App.3d 437 [219 Cal.Rptr. 26]. *Read* allowed a city employee who was fired under procedures contrary to a city ordinance to sue for the tort of wrongful discharge. (*Id.* at

---

[9]The City is one such city. (*Binkley* v. *City of Long Beach* (1993) 16 Cal.App.4th 1795, 1800-1801 [20 Cal.Rptr.2d 903].)

[10]See *Miller* v. *State of California, supra,* 18 Cal.3d at page 814 (" '[S]tatutory provisions controlling the terms and conditions of civil service employment cannot be circumvented by purported contracts in conflict therewith.' . . .").

p. 445.) Nowhere, however, does *Read* discuss any right by the employee to sue for breach of contract. Hence, it does not support Hill's position.[11]

The other cases Hill cites are even less helpful. *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774], *Bush* v. *California Conservation Corps* (1982) 136 Cal.App.3d 194 [185 Cal.Rptr. 892], and *Mendoza* v. *Regents of University of California* (1978) 78 Cal.App.3d 168 [144 Cal.Rptr. 117], involved claims of denial of procedural due process where it was assumed the employee could be terminated only for good cause. They have nothing to say about whether Hill may be fired only for good cause.

The remaining cases cited by Hill, *Rutley* v. *Belmont Elementary Sch. Dist.* (1973) 31 Cal.App.3d 702 [107 Cal.Rptr. 671], *Frates* v. *Burnett* (1970) 9 Cal.App.3d 63 [87 Cal.Rptr. 731], and *American Federation of Teachers* v. *Oakland Unified Sch. Dist.* (1967) 251 Cal.App.2d 91 [59 Cal.Rptr. 85], are likewise unhelpful. They involved public school teachers who are covered by the special provisions of the Education Code and as such have no bearing on this case.

## II.

■ Having established that the terms of Hill's employment are established by law, we must next determine the applicable law.

The City is a charter city. (*Binkley* v. *City of Long Beach, supra,* 16 Cal.App.4th at p. 1800)[12] As a charter city, it is empowered under the "home rule" provision of article XI, section 5 of the California Constitution to regulate, control, and govern its internal affairs. (*Johnson* v. *Bradley* (1992) 4 Cal.4th 389, 395-396 [14 Cal.Rptr.2d 470, 841 P.2d 990].) This power over internal affairs extends to the City's role as an employer. (*Williams* v. *Department of Water & Power* (1982) 130 Cal.App.3d 677, 680 [181 Cal.Rptr. 868].) Thus, we look to the City's charter, civil service rules and regulations, and employee handbook for guidance on Hill's employment rights. (*Williams* v. *Department of Water & Power, supra,* 130 Cal.App.3d at p. 680 [the court looked to the Los Angeles City Charter and civil service rules in determining the rights of a department of water and power employee

---

[11]*Read* has also been criticized as "inconsistent with Supreme Court and other cases on the subject" of a discharged public employee's rights. (*Kemmerer* v. *County of Fresno* (1988) 200 Cal.App.3d 1426, 1434 [246 Cal.Rptr. 609].)

[12]Hill attempts to distinguish *Binkley* on the ground that the charter provisions at issue in that case are not the same as the ones at issue here. While true, this distinction misperceives *Binkley*'s significance here, which is simply that it establishes the City is a charter city with home rule powers.

because "[i]t is well settled that the terms and conditions of public employment including term of service, are fixed by the statute, rules or regulations creating it . . ."].)

The City's charter and civil service rules establish the following employment scheme:

(1)   City employees are divided into classified and unclassified members of the City's civil service. (Long Beach City Charter, art. 11, § 1103.) Eight categories of unclassified employees are specifically identified in the City's charter. (*Ibid.*) For the most part, these employees are upper level managers and their assistants. Everyone else who is not covered by one of those eight categories is a classified employee. (*Ibid.*)

(2)   Classified employees may be terminated only for good cause after a hearing and a right to appeal. (Long Beach City Charter, art. 11, § 1103, art. 3, § 302(b).)

(3)   In contrast, unclassified employees serve at the City's pleasure. (City of Long Beach Employee Handbook ["Unclassified employees serve at the pleasure of the appointing authority"].)[13] Serving at pleasure means one is an at-will employee who can be fired without cause. (*Bogacki* v. *Board of Supervisors* (1971) 5 Cal.3d 771, 783 [97 Cal.Rptr. 657, 489 P.2d 537] [it has always been the law in California that a "public employee serving at the pleasure of the appointing authority . . . is by the terms of his employment subject to removal without judicially cognizable good cause"].) Unclassified employees do, however, have a right of reversion. (City of Long Beach Civil Service Rules and Regs. § 91.) Under this right, an unclassified employee who is laid off, and who was formerly a classified employee, has the right to revert to his previous classified position.

Applying the above framework to Hill's position as managing director, we note his position was unclassified. Accordingly, we conclude he held his position at the City's pleasure and could be removed without good cause, but, if removed, had the right to revert to environmental specialist, his last classified position.

Hill relies on section 1203(q) of the City's charter to argue that managing director was not an at-will position, and therefore he could be removed only

---

[13]The employee handbook was not admitted into evidence at trial. However, the relevant portion was authenticated by declaration and submitted in support of the City's unsuccessful motion for summary judgment. We thus take judicial notice of it as part of the trial court's files.

for cause. This section authorizes the harbor commission to appoint an executive director and assistant executive director, each of whom expressly holds the position at the commission's pleasure. Hill contends the section's failure to identify any other employee as serving at the commission's pleasure means all other harbor department employees may be removed only for good cause.

There are two problems with Hill's interpretation of section 1203(q) of the Long Beach City Charter. First, in matters of public employment, silence as to a right cannot be construed to mean the right exists. In *Barthuli* v. *Board of Trustees* (1977) 19 Cal.3d 717 [139 Cal.Rptr. 627, 566 P.2d 261], the court rejected an argument similar to Hill's made by a school district's associate superintendent. The associate superintendent argued that although statutes applicable to superintendents did not provide a right to a hearing before termination, statutes providing teachers with that right should apply because he was concurrently classified as a teacher. The court stated: "In the absence of such [express] provisions[, the statutes] must be read as establishing that administrative and supervisory personnel do not possess a statutory right to their positions." (*Barthuli* v. *Board of Trustees, supra,* 19 Cal.3d at p. 721; see also *Seidler* v. *Municipal Court* (1993) 12 Cal.App.4th 1229, 1238 [16 Cal.Rptr.2d 90] [relying on *Miller* v. *State of California, supra,* 18 Cal.3d 808, the court stated: "[T]here is no clear statutory language entitling municipal court administrators to discharge only upon good cause . . . . In the absence of clear legislative language affording court administrators protected rights, a court administrator has no such entitlement."].)

Second, Hill's interpretation is inconsistent with the traditional purpose of a civil service system. Giving unclassified upper management employees the dual right, as Hill proposes, to be terminated only for good cause with the right to revert to a classified position, gives them more job security than is granted to rank-and-file classified employees, who only have the right not to be terminated without good cause. Such extra protection turns a civil service system on its head. A civil service system is traditionally thought to protect lower level employees, who exercise little or no discretion in matters of public policy, from having their jobs depend on the whims of elected officials, while leaving higher level managers, who exercise much more discretion, unprotected and thus more responsive and accountable to political events, elected officials, and, ultimately, the electorate.

### III.

Because we hold that Hill could be removed from his position as managing director without good cause, it was error to allow the case to go to the

jury on breach of contract theories. As breach of contract theories were the only ones tried to the jury, its verdict is fatally flawed and must be reversed.

### HILL'S CROSS-APPEAL OF THE ORDER SUSTAINING THE DEMURRERS

■ In reviewing the cross-appeal, we note the following additional facts in the record.

After the demurrers were sustained, no order of dismissal of the individual defendants or of the noncontract causes of action was ever entered. Counsel for the City, who also represented the individual defendants, twice submitted orders of dismissal, once before trial, and again after the jury reached its verdict. But each time, the court refused to enter the dismissals. The record does not explain why the law and motion judge who ruled on the demurrers refused to enter the pretrial dismissal, although the City's brief states it was in deference to the one judgment rule. But the record shows Hill objected to entry of the posttrial dismissal. The final judgment which was entered was prepared and submitted by Hill and referenced only the jury's verdict against the City on the contract actions and entirely omitted any mention of the noncontract actions or the individual defendants.

Orders sustaining demurrers are not appealable. (Code Civ. Proc., § 904.1; *Otworth* v. *Southern Pac. Transportation Co.* (1985) 166 Cal.App.3d 452, 457 [212 Cal.Rptr. 743].) An appeal can be taken after entry of such an order only after the court enters an order of dismissal. (*Beazell* v. *Schrader* (1963) 59 Cal.2d 577, 579 [30 Cal.Rptr. 534, 381 P.2d 390].) Here, no dismissal of the noncontract causes of action or of the individual defendants was ever entered. Accordingly, this court has no statutory authority to entertain Hill's cross-appeal.

We recognize it is within our discretion to save Hill's cross-appeal by modifying the trial court's judgment to reflect dismissal of Hill's non-contract causes of action and of the individual defendants. (See *Avila* v. *Standard Oil Co.* (1985) 167 Cal.App.3d 441, 445 [213 Cal.Rptr. 314]; *Munoz* v. *Davis* (1983) 141 Cal.App.3d 420, 431 [190 Cal.Rptr. 400].) But the reason Hill does not have an appealable order is he objected to its entry. While our discretion might be properly exercised when an appellant finds himself without an appealable order because of simple inadvertence or mistake (*Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 921 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th]), extricating Hill from a problem of his own making is not a proper exercise of our discretion.

Moreover, if we were to exercise our discretion, we would be doing so contrary to the trend in this district and elsewhere to be less indulgent of

parties who fail to perfect their rights of appeal. (*Jordan* v. *Malone* (1992) 5 Cal.App.4th 18, 22 [6 Cal.Rptr.2d 454] ["The trend of recent cases of the Courts of Appeal is to hold appellate counsel to strict account for ensuring that their appeal rights are perfected according to the applicable statutes and rules of court."]; *Modica* v. *Merin* (1991) 234 Cal.App.3d 1072, 1075 [285 Cal.Rptr. 673] ["Even before the Court of Appeal in the Second District, Division Seven, publicly declared its exasperation with this dolorous state of affairs [of parties attempting to appeal from nonappealable orders in *Cohen* v. *Equitable Life Assurance Society* (1987) 196 Cal.App.3d 669, 671 (242 Cal.Rptr. 84)], this court had abandoned its policy of tolerance. We have long since determined the proper role of an appellate court is to adhere to and apply Code of Civil Procedure section 904.1, not to devise and employ strategies for its wholesale avoidance."]; *Cohen* v. *Equitable Life Assurance Society* (1987) 196 Cal.App.3d 669, 671 [242 Cal.Rptr. 84] ["We are wearying of 'appeals' from clearly nonappealable orders. . . . [¶] [W]e hereby give notice to the bar that henceforth we will no longer bail out attorneys who ignore the statutory limitations on appealable orders."].)

Accordingly, we dismiss Hill's cross-appeal for lack of an appealable order.

### DISPOSITION

We direct the trial court to vacate its judgment and enter a new and different judgment for the City of Long Beach, the Long Beach Harbor Department, and the Long Beach Board of Harbor Commissioners as to Hill's contract causes of action.

Hill's cross-appeal is dismissed without reaching its merits for lack of appellate jurisdiction.

Each party to bear its own costs on appeal.

Grignon, Acting P. J., and Armstrong, J., concurred.

The petition of appellant Leland R. Hill for review by the Supreme Court was denied June 14, 1995.