Filed 1/27/20

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>WILMAR VASQUEZ,<br><br>    Defendant and Appellant. | B295698<br><br>(Los Angeles County Super. Ct. No. PA090978) |


APPEAL from a judgment of the Superior Court of Los Angeles County, Michael Terrell, Judge.  Affirmed.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Blake Armstrong, Deputy Attorney General, for Plaintiff and Respondent.

———————————————

The jury found defendant and appellant Wilmar Vasquez guilty of willful, deliberate, and premeditated attempted murder (Pen. Code, §§ 187, 664[1] [count 1]), mayhem (§ 203 [count 2]), and making a criminal threat (§ 422, subd. (a) [count 3]). As to counts 1 and 2, the jury found true the allegation that Vasquez personally inflicted great bodily injury upon the victim, under circumstances involving domestic violence. (§ 12022.7, subd. (e).) As to all counts, the jury found true the allegation that Vasquez personally used a deadly and dangerous weapon, a knife (§ 12022, subd. (b)(1)), causing the offenses to be serious felonies (§ 1192.7, subd. (c)).

The trial court sentenced Vasquez to a term of seven years to life, plus a determinate term of seven years eight months as follows: In count 1, Vasquez was sentenced to life, plus consecutive determinate terms of four years for the personal infliction of great bodily injury enhancement, and one year for the personal use of a deadly or dangerous weapon enhancement. He was sentenced to a consecutive term of two years in count 2, and a consecutive term of eight months in count 3.

On appeal, Vasquez's sole contention is that his sentence for mayhem in count 2 must be stayed under section 654, because it was part of a continuous course of conduct and committed with the same criminal intent as the attempted murder in count 1.

---

[1] All future statutory references are to the Penal Code unless otherwise indicated.

2

We affirm the trial court's judgment.

## FACTS[2]

Vasquez and the victim, E.R., were involved in a relationship for two years.  Vasquez rented a room in her house and they sometimes slept in the same bed.  She ended the relationship about two years before the charged offenses occurred, when she discovered he had a wife and children.  Vasquez "said he was fine" with her ending the relationship.  He moved out of E.R.'s house.

On the day of the offenses, E.R. went to the park with her 16-year-old son Eddy, and Eddy's three cousins.  When they returned home, Eddy and his cousins went inside to drop off Eddy's backpack.  E.R. walked over to the trash bin to move it in from the street and saw Vasquez standing there.  He shouted at her in Spanish, "I'm going to kill you," and pulled a knife from his waistband.

E.R. ran through the gate at the front of her house, and ran down the street, calling for help in English and Spanish.  Vasquez ran after her.  Two houses away from her house, E.R. lost her footing and fell backwards.  Vasquez straddled her on the ground and threatened to kill her.  He stabbed her in the chest with the knife and twisted the blade.  E.R. tried to defend herself by putting her fingers in Vasquez's

---

[2] We state the facts as presented by the prosecution. Vasquez did not present evidence in his defense.

eyes.  Vasquez bit the middle and ring fingers of her right hand, and he cut her left hand with the knife.

Eddy came outside. He heard his mother screaming and saw the attack.  Eddy grabbed Vasquez's arm and tried to take the knife away, but was unable to.

A neighbor heard E.R. screaming, and also came outside and witnessed the attack.  The neighbor thought Vasquez was going to hit or harm E.R. so he grabbed Vasquez and pushed him to the side.  Eddy then pulled Vasquez off his mother and "took him down to the ground." The neighbor took the knife from Vasquez and placed it on the ground.  He then called 911.[3]

Los Angeles Police Officer Brian Grumet and his partner responded.  When they arrived, there was a large crowd on the sidewalk, a male on top of another male holding him down, and a female standing off to the side, crying.  The woman had red stains on her clothing.  She had several lacerations on her hands and a stab wound on her upper abdomen.  One of the ambulance workers recovered a tip of one of her fingers on the ground.  Officer Grumet recovered a knife, which appeared to have red stains on the blade, and called for an ambulance.

E.R. was transported to the hospital.  She had surgery on both hands and in the chest/upper abdomen area where she was stabbed.  She remained in the hospital for three days.  She lost a piece of the top of the middle finger on her right hand and has scars on her left hand.  At the time of the

---

[3] A recording of the 911 call was played to the jury.

4

trial, she was still experiencing pain in her right hand and had difficulty opening things with her left hand. She is scarred where Vasquez stabbed her, and it is painful if she tries to sleep facing down.

## DISCUSSION

Vasquez contends that the trial court erred when it imposed punishment in both count 1 and count 2, because he stabbed and bit E.R. pursuant to a single objective and intent—he intended to kill her—and section 654 prevents multiple punishment for acts that occur during a single course of conduct for which the defendant harbors the same objective and intent.[4] We disagree, and affirm the trial court's judgment.

### *Legal Principles*

Section 654, subdivision (a) provides, in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

"In *Neal v. State of California* (1960) 55 Cal.2d 11, this court construed the statute broadly: "'Section 654 has been

---

[4] Count 2 was based on Vasquez's act of severing one of E.R.'s fingers.

5

applied not only where there was but one 'act' in the ordinary sense . . . but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654." [Citation.] [¶] Whether a *course of criminal conduct* is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' (*Id.* at p. 19, italics added.)" (*People v. Rodriguez* (2009) 47 Cal.4th 501, 507.) "If [the defendant] entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*People v. Beamon* (1973) 8 Cal.3d 625, 639.)

The temporal proximity of two offenses is insufficient by itself to establish that they were incidental to a single objective. (*People v. Jackson* (2016) 1 Cal.5th 269, 354 (*Jackson*).) Objectives may be separate when "the objectives were either (1) consecutive even if similar or (2) different even if simultaneous." (*People v. Britt* (2004) 32 Cal.4th 944, 952; see also *People v. Latimer* (1993) 5 Cal.4th 1203, 1211–1212.) Section 654 "cannot, and should not, be stretched to cover gratuitous violence or other criminal acts far beyond

6

those reasonably necessary to accomplish the original offense." (*People v. Nguyen* (1988) 204 Cal.App.3d 181, 191.)

"Intent and objective are factual questions for the trial court, which must find evidence to support the existence of a separate intent and objective for each sentenced offense." (*Jackson, supra*, 1 Cal.5th at p. 354.) "The trial court has broad latitude in determining whether section 654, subdivision (a) applies in a given case." (*People v. Garcia* (2008) 167 Cal.App.4th 1550, 1564.) In analyzing whether section 654 bars the imposition of multiple sentences, we consider the evidence in the light most favorable to the judgment and affirm the trial court's sentencing decision— whether express or implied—if it is supported by substantial evidence. (See *People v. Brents* (2012) 53 Cal.4th 599, 618; *People v. Hicks* (2017) 17 Cal.App.5th 496, 514–515.) Under this standard, this court must view the evidence in the light most favorable to the trial court's finding and presume the existence of every fact the trial court could reasonably deduce from the record. (*People v. Vang* (2010) 184 Cal.App.4th 912, 915–916.) Ultimately, "[i]f the trier of fact determines the crimes have different intents and motives, multiple punishments are appropriate." (*People v. Saffle* (1992) 4 Cal.App.4th 434, 439.) "[W]e review the trial court's conclusions of law de novo. (*Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1687.)" (*People v. Moseley* (2008) 164 Cal.App.4th 1598, 1603.)

*Proceedings*

At the sentencing hearing, the trial court requested that the parties address the sentence in count 2, and specifically whether the court should impose the middle or low term for mayhem. The prosecutor requested a consecutive mid term sentence, arguing, "I do think there were separate intents. I don't think you can really kill somebody, per se, with trying to bite their finger off." The trial court responded, "I understand why it needs to be consecutive and I think it's because they were separate crimes, but it was all sort of the same frame of mind by the defendant." The prosecutor added, "I think he intended to go there to kill her and then when he realized that he wasn't able to do that he was trying to inflict as much damage as possible, and she suffered severely for it." Defense counsel asked for a low term sentence for count 2, and argued, "I don't believe there was an actual intent to commit mayhem in the sense that I think it was all part and parcel of the -- count 1 and a continuation of the actions and that was probably a reflexive movement when the victim was fighting back."

The trial court imposed the lower term of two years in count 2, to run consecutive to the sentence imposed in count 1. Vasquez did not cite to section 654, nor did he object to

the imposition of consecutive sentences in counts 1 and 2 at the sentencing hearing.[5]

*Analysis*

We agree with the People that, although the offenses occurred in close proximity, substantial evidence supports the finding that Vasquez had a separate intent for each. The circumstances are analogous to those in *People v. Harrison* (1989) 48 Cal.3d 321 (*Harrison*). In *Harrison*, the defendant sexually assaulted the victim for a period of 7 to 10 minutes. Within that time he digitally penetrated the victim three different times. Each time, the victim interrupted the offense by struggling. In holding that punishment could be imposed on all three counts, the court reasoned that it "would be hard pressed to view the various breaks in vaginal penetration as 'fortuitous.'" (*Id.* at p. 338.) "[*E*]*ach of defendant's 'repenetrations' was clearly volitional, criminal and occasioned by separate acts of force.* Defendant urges that no greater punishment should befall him simply because the initial offense was interrupted by the victim's

---

[5] Despite the lack of objection, Vasquez's challenge was not forfeited on appeal for failure to raise the issue with the trial court, as the People concede. (*People v. Hester* (2000) 22 Cal.4th 290, 295, quoting *People v. Perez* (1979) 23 Cal.3d 545, 549–550, fn. 3 ["Errors in the applicability of section 654 are corrected on appeal regardless of whether the point was raised by objection in the trial court or assigned as error on appeal"].)

struggle.  By the same token, however, defendant should also not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he voluntarily resumed his sexually assaultive behavior." (*Ibid.*)  The court declined to extend 654 to preclude multiple punishment of the offenses.  (*Ibid.*)

Here, Vasquez threatened to kill E.R., and then plunged and twisted a knife into her chest area in an attempt to murder her.  E.R. fought back, preventing him from stabbing her again by putting her fingers in his eyes.  Vasquez then bit her fingers.  As the prosecutor pointed out, substantial evidence supports the conclusion that it was not Vasquez's intent to kill E.R. by biting her fingers.  Such an action, while violent and reprehensible, will not result in death, whereas in many instances stabbing someone in the chest and twisting the knife into their body will.  At the point in the attack when Vasquez bit E.R., E.R. had just injured Vasquez by putting her fingers into his eyes.  It would be reasonable to infer that Vasquez's intent in biting her fingers was not to kill E.R., but to retaliate against her for using her fingers to injure him.  Substantial evidence supports the trial court's implied finding that Vasquez acted with a separate objective and intent when he stabbed E.R. than he did when he bit her, and is therefore more culpable, and deserving of punishment for each offense.

## DISPOSITION

The trial court's judgment is affirmed.

MOOR, J.

We concur:

RUBIN, P. J.

KIM, J.