Filed 2/25/26  Stahl v. Chicago Title Co. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| LILA STAHL,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>CHICAGO TITLE COMPANY,<br><br>  Defendant and Respondent. | G064140<br><br>(Super. Ct. No. 30-2022-01286808)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Melissa R. McCormick, Judge. Affirmed.

Park, Daniel E. Park, Wil J. Rios and Jason H. Woltman for Plaintiff and Appellant.

Fidelity National Law Group and Kevin R. Broersma for Defendant and Respondent.

Plaintiff Lila Stahl appeals from the trial court's order sustaining, without leave to amend, defendant Chicago Title Company's demurrer to her claims against it for declaratory relief, wrongful foreclosure, and negligence. Although Stahl's appeal was prematurely filed before judgment was entered in favor of Chicago Title, for the reasons discussed *post*, we exercise our discretion to review the court's ruling. (See *Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643, 655.)

As we will also explain, Stahl has neither stated facts sufficient to allege any cause of action against Chicago Title, nor demonstrated the reasonable possibility that the defects in her operative pleading can be cured by amendment. We therefore affirm.

ALLEGATIONS AND PROCEDURAL BACKGROUND

I.

THE TRIAL COURT SUSTAINS WITH LEAVE TO AMEND CHICAGO TITLE'S DEMURRER TO THE FIRST AMENDED COMPLAINT

In October 2022, Stahl initiated this action against GF Capital, Proforma77, and Chicago Title in connection with a guaranty agreement Stahl signed with respect to a promissory note Butterfly Pavillion, LLC executed in favor of GF Capital. Stahl asserted claims against Chicago Title for declaratory relief, wrongful foreclosure, and negligence.[1]

Stahl filed a first amended complaint containing the same causes of action against Chicago Title. In response, Chicago Title filed a demurrer

---

[1] These same claims were also asserted against GF Capital and Proforma77 along with the additional claims of breach of contract, breach of the implied covenant of good faith and fair dealing, fraudulent misrepresentation, promissory fraud, negligent misrepresentation, and unfair competition. None of the claims asserted against GF Capital and Proforma77 are at issue in this appeal.

2

challenging all three claims asserted against it. The trial court sustained the demurrer with leave to amend.

## II.

## THE SECOND AMENDED COMPLAINT

Stahl thereafter filed a second amended complaint, which is the operative pleading, alleging the following:

Stahl and her now late husband contracted with the City of Buena Park (City) to create an "'[i]ndoor, interactive rainforest habitat housing thousands of butterflies'" (the project). Butterfly, of which Stahl is owner, manager, and principal, owned real property in the City where, with City approval, it "fully designed and partially completed construction of an entertainment venue" (the property).

In August 2018, Butterfly requested an extension from the City to complete the project beyond the original December 2018 completion date. Butterfly also obtained additional financing from GF Capital in the amount of $2 million to continue financing Butterfly's development of the project and, on August 9, 2018, signed a promissory note and a deed of trust in favor of GF Capital with respect to that debt. The promissory note stated, "'[T]he principal sum plus the accrued interest and any other outstanding sums shall be all due and payable on December 31, 2018.'" Stahl and Stephen Whang[2] signed a guarantor agreement with respect to the promissory note.

---

[2] Whang was a named plaintiff when this action was filed in October 2022. In February 2023, he filed a request for dismissal of all his claims with prejudice. Dismissal of his claims was entered by the court clerk accordingly. Although Stahl listed Whang as a plaintiff in the second amended complaint filed months later, Whang is no longer a party in this action and is only mentioned in this opinion for relevant background.

3

On December 31, 2018, Butterfly defaulted on the promissory note, and on February 28, 2019, GF Capital recorded a notice of default and election to sell under the deed of trust. On June 13, 2019, GF Capital recorded a notice of trustee's sale, which scheduled a foreclosure sale of the property to be held on July 11, 2019.

Two days before the scheduled date for the foreclosure sale, on July 9, 2019, Butterfly, along with Stahl and Whang as guarantors, executed a forbearance agreement with GF Capital. The terms of the forbearance agreement included GF Capital's agreement not to foreclose until after August 30, 2019, in exchange for Stahl and Whang making two $10,000 payments to GF Capital.

Particularly relevant to the issues presented in this appeal, Stahl alleged in the second amended complaint the forbearance agreement (1) "specified that the party initiating the foreclosure process in the event of a loan default, was required to provide notice"; (2) "effectively nullified the existing default status of Butterfly" so that "when Butterfly would ultimately default, it would be marked a fresh default and obligated GF Capital to initiate the full statutory notice procedure for a foreclosure yet again"; and (3) required GF Capital to record a notice of sale before it elected to initiate any foreclosure.

On August 30, 2019, Proforma77's articles of incorporation were executed and filed with the Secretary of State. That same day, GF Capital assigned to Proforma77 all of its beneficial interest under the deed of trust.

On September 3, 2019, Chicago Title, as trustee, held a foreclosure sale based on Butterfly's default. It did so at the direction of Proforma77, which purchased the property, "appraised [for] $23 million," for

4

$201,000 in a credit bid. The trustee's deed upon sale was thereafter recorded.

## III.

### THE TRIAL COURT SUSTAINS WITHOUT LEAVE TO AMEND CHICAGO TITLE'S DEMURRER TO THE SECOND AMENDED COMPLAINT

Chicago Title again demurred to the declaratory relief, wrongful foreclosure, and negligence causes of action asserted against it, this time as they are contained in the second amended complaint. The trial court sustained the demurrer in its entirety. The court further ruled Stahl failed to show the deficiencies in pleading her causes of action against Chicago Title can be cured by amendment and therefore denied Stahl further leave to amend.

Stahl appealed.

## DISCUSSION

### I.

### APPEALABILITY

Stahl filed a notice of appeal on May 7, 2024, in which she purported to appeal from the trial court's March 7, 2024 minute order sustaining Chicago Title's demurrer to the second amended complaint without leave to amend. As "[o]rders sustaining demurrers are not appealable," we invited the parties to file letter briefs addressing whether the court's March 7, 2024 minute order is appealable. (*Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1695.) Both parties did so.

In its letter brief, Chicago Title stated it had submitted a proposed judgment to the trial court which was rejected by the court clerk on the ground the trial court's March 7, 2024 minute order constituted the order of the court. Chicago Title stated it has since tried to explain to the court

5

clerk the need for entry of judgment but had not yet heard back from the clerk.

In her letter brief, Stahl argues we should exercise our discretion to review the trial court's March 7, 2024 minute order because it disposes of all causes of action asserted against Chicago Title in this action and doing so would avoid delay and otherwise serve the interests of justice. Chicago Title stated it did not take a position on whether this court should construe the March 7, 2024 minute order as an appealable order or judgment.

The California Supreme Court in *Meinhardt v. City of Sunnyvale, supra*, 16 Cal.5th at pages 654–655 stated: "Despite the requirement of a 'judgment,' the significance of the one judgment rule, and statutory limitations on what is appealable, reviewing courts, including ours, have deemed orders and other rulings to be the 'judgments' under certain circumstances, such as when the ruling is sufficiently final to constitute the one judgment in the case, to promote judicial economy, to preserve a party's right to appeal, and to permit appellate review on the merits. [Citations.] [¶] This practice has been common in cases involving orders that reflect the trial court's final decision but are not statutorily appealable, such as . . . orders sustaining demurrers without leave to amend." (See Cal. Rules of Court, rule 8.104(d)(2) ["The reviewing court may treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment"].)

The March 7, 2024 minute order disposes of all claims asserted against Chicago Title and is sufficiently final to constitute the one final judgment in the case with respect to Chicago Title. Thus, in the interests of justice and to avoid delay, we deem that order to be a judgment, permitting our appellate review.

6

## II.

### STANDARD OF REVIEW

"'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' [Citation.] ""'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed." . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context."'"" (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768.) "We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons.'" (*Entezampour v. North Orange County Community College Dist.* (2010) 190 Cal.App.4th 832, 837.)

## III.

### STAHL'S CLAIMS FAIL TO THE EXTENT THEY ARE BASED ON CHICAGO TITLE'S FAILURE TO RE-RECORD A NOTICE OF SALE

In sustaining Chicago Title's demurrer to the second amended complaint, the trial court noted Stahl's claims were based in part on allegations: (1) paragraph G of the forbearance agreement required a notice of sale to be recorded and yet none was recorded; and (2) the failure to so record a notice of sale violated Civil Code section 2924.

Stahl had previously asserted these same allegations as the basis for her claims against Chicago Title in the first amended complaint. In sustaining Chicago Title's demurrer to that pleading, the trial court explained, in its July 27, 2023 minute order, Stahl's allegations that paragraph G of the forbearance agreement required Chicago Title to record a notice of sale in compliance with Civil Code section 2924 and that it failed to

7

do so is contradicted by the forbearance agreement itself, "other allegations in the [first amended complaint] and judicially noticed documents."

As quoted in the first amended complaint, and again in the second amended complaint, paragraph G of the forbearance agreement, which is part of the agreement's recitals, states: "'[Butterfly] has requested that, notwithstanding the Existing Loan Defaults, the Notice of Default, and [Butterfly]'s failure to cure as set forth herein, [GF Capital] forbear by *delaying the recording of a notice of sale* of the Collateral so [Butterfly] has additional time to attempt to secure replacement financing for the full and complete satisfaction of all [Butterfly]'s obligations to [GF Capital] under the Loan Agreement.'" (Boldface omitted.)

In considering Chicago Title's demurrer to the first amended complaint, the trial court observed the pleading itself alleged that, before the parties entered the forbearance agreement, a notice of trustee's sale had been recorded on June 13, 2019. As for Stahl's contention paragraph G of the forbearance agreement required the *re*-recording of the notice of trustee's sale, the court observed paragraph G contains no such requirement. Instead, the court explained: "Paragraph G is a recital and simply provides the context for the agreement to forbear from proceeding with the foreclosure until after August 30, 2019 instead of as scheduled on July 11, 2019 as set forth in the recorded notice of trustee's sale." (See *Sabetian v. Exxon Mobil Corp.* (2020) 57 Cal.App.5th 1054, 1069 ["'The law has long distinguished between a "covenant" which creates legal rights and obligations, and a "mere recital" which a party inserts for his or her own reasons into a contractual instrument. Recitals are given limited effect even as between the parties'"].)

In sustaining Chicago Title's demurrer to the first amended complaint, the trial court ruled: "Paragraph G does not contain language that

8

the parties agreed or understood, or that [GF Capital] agreed to do anything. Rather, under the plain language of Paragraph G, [Stahl] 'requested' that GF Capital delay the recording of the notice of sale. An explanation of what one party requested of another party does not identify any agreed upon obligation or covenant, but merely provides factual information and context to the agreement. [Citations.] Given that the [first amended complaint] sets forth the express language in Paragraph G relied on by [Stahl], the Court need not accept [Stahl's] conclusory allegations regarding its meaning, i.e. that Paragraph G creates an obligation or covenant. [Citation.] [¶] As there is no requirement under Paragraph G to record or re-record a Notice of Trustee's Sale, and in any event, a Notice of Trustee's Sale was recorded, Paragraph G fails to provide support for [Stahl's] claims against [Chicago Title]. [¶] Since [Chicago Title's] alleged non-compliance with the notice requirement of Civil Code [section] 2924 is based on the alleged failure to record the Notice of Sale as required under Paragraph G [citation], there is no support for the allegations of non-compliance with Civil Code [section] 2924."

In its March 7, 2024 minute order sustaining Chicago Title's demurrer to the second amended complaint, the trial court stated Stahl "has not remedied in the second amended complaint the deficiencies the court identified in the July 27, 2023 order." The court noted that while Stahl again alleges in support of her claims paragraph G of the forbearance requirement required Chicago Title to record a notice of title but it did not do so and thus violated Civil Code section 2924, "[t]hese allegations fail to state claims against [Chicago Title] for declaratory relief, wrongful foreclosure, and negligence for the same reasons identified in the court's July 27, 2023 order."

In her opening brief, Stahl does not address, much less challenge the trial court's determination that she has failed to state facts sufficient to

9

allege any of her claims against Chicago Title based on her allegations paragraph G of the forbearance agreement required Chicago Title to record or re-record a notice of sale. Nor does she argue the court erred in sustaining the demurrer to the first amended complaint.

As the second amended complaint acknowledges Chicago Title recorded a notice of sale Stahl does not contend was improperly done, and nothing in paragraph G of the forbearance agreement required Chicago Title to thereafter re-record a notice of sale, the trial court did not err by sustaining the demurrer to the extent Stahl's claims were based on a violation of that agreement for failure to re-record the notice of sale.

IV.

STAHL FAILS TO STATE CLAIMS BASED ON THE THEORY THE FORBEARANCE AGREEMENT "NULLIFIED" BUTTERFLY'S THEN-EXISTING DEFAULT

In the second amended complaint, Stahl added a new theory in support of her claims against Chicago Title by alleging the forbearance agreement "effectively nullified" Butterfly's then-existing default. Consequently, Stahl alleged, "when Butterfly would ultimately default, it would be considered a new default, and obligated GF Capital to initiate the full statutory notice procedure for a foreclosure yet again."

In her opening brief, Stahl argues a trustee, such as Chicago Title, "cannot proceed with foreclosure using outdated notices when the default status has materially changed." She argues the trial court erred by sustaining the demurrer because she "sufficiently alleged that Chicago Title knowingly conducted a foreclosure sale despite recognizing that the required foreclosure notices were legally invalid" as the forbearance agreement "reset the default status, extending Stahl's repayment obligations and requiring new foreclosure notices."

10

As pointed out by the trial court in its March 7, 2024 minute order, the language of the forbearance agreement itself directly contradicts Stahl's new theory. Section 6 of the forbearance agreement states: "Provided that all conditions set forth in this Agreement are met and fully complied with, [GF Capital] hereby agrees to forbear by delaying the foreclosure sale of the Collateral (the 'Forbearance') until a date after August 30, 2019." Significantly, section 6.2 of that agreement expressly states in relevant part: "Agreement is a Conditional Forbearance Only. . . . [Butterfly] also acknowledges that the *Existing Loan Defaults are not cured as a result of this Agreement*, and that [GF Capital] *does not waive any default, or waive any right or remedy arising therefrom* as a result of the Forbearance. [Butterfly] also acknowledges that the Forbearance and this Agreement shall not be deemed a continuing waiver or forbearance with respect to any default of a similar nature that may occur after the date of the Agreement." (Italics added and underscoring omitted.)

Thus, as correctly explained by the trial court in its March 7, 2024 minute order, while the forbearance agreement provided for the delay of the foreclosure sale, it expressly stated the existing default was not cured and the agreement did not otherwise include any waiver of Butterfly's default or rights or remedies arising from the default. Consequently, Stahl has failed to state claims against Chicago Title based on the theory the forbearance agreement nullified the existing default and required a redo of all the statutory procedures for foreclosure. The trial court properly sustained Chicago Title's demurrer as to all claims asserted against it.

11

V.

## THE TRIAL COURT DID NOT ERR BY DENYING LEAVE TO AMEND

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; see *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

"Absent an effective request for leave to amend the complaint in specified ways, an abuse of discretion can be found "'only if a potentially effective amendment were both apparent and consistent with the plaintiff's theory of the case.'"" (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 507, disapproved on another ground in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939, fn. 13.)

Stahl contends the trial court erred by denying her further leave to amend. But Stahl has not demonstrated there is a reasonable possibility the defects in the claims she has asserted against Chicago Title in the second amended complaint can be cured by amendment.

Instead, in her appellate briefing, Stahl offers her conclusion the second amended complaint "could have been amended to provide more specific allegations detailing how the [f]orbearance [a]greement altered the default timeline and required a new [n]otice of [d]efault, further facts regarding Chicago Title's awareness of the [f]orbearance [a]greement and its failure to issue a new [n]otice of [d]efault . . . and additional allegations showing how Chicago Title's misconduct directly harmed Stahl by depriving her of the opportunity to cure the default and protect her property from

12

foreclosure." Stahl, however, fails to explain how any of these new allegations would cure the defects in pleading the claims against Chicago Title. We therefore conclude Chicago Title's demurrer to the second amended complaint was properly sustained without leave to amend.

## DISPOSITION

The judgment is affirmed. Respondent to recover costs on appeal.


MOTOIKE, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


GOODING, J.


13