Filed 12/21/22  Williams v. New Penn Financial CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SANDRA WILLIAMS,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>NEW PENN FINANCIAL, LLC et al.,<br><br>　　　Defendants and Respondents. | A164511<br><br>(Solano County<br>Super. Ct. No. FCS052042) |

In 2006, appellant Sandra Williams entered into a loan secured by a deed of trust on her home, and at the same time obtained a home equity loan of credit (HELOC) secured by a separate deed of trust.  In 2016 Williams refinanced the primary loan with New Penn Financial, LLC (New Penn).  The HELOC remained.  Williams made payments on the HELOC until February or March of 2018, at which time, in her words, she "just felt like that home line of credit was just bogus and I was going to let it go."  And she stopped making payments.  The servicer of the HELOC sent a notice of default, several months later a notice of trustee's sale, and Williams's home was sold at foreclosure.

Williams sued, ultimately asserting four causes of action against New Penn:  negligence, intentional misrepresentation, negligent

1

misrepresentation, and violation of the Unfair Competition law. New Penn moved for summary judgment, which the court granted, and Williams appeals, asserting four arguments, one procedural and three substantive, the substantive arguments essentially contending that there were "disputed material facts." We affirm.

## BACKGROUND

### The Facts

In 2006, Williams entered into a loan with Countrywide Home Loans in the amount of $372,001, secured by a deed of trust on her home in Vallejo. At that same time, Williams also obtained a HELOC with a credit limit of $30,000, also secured by Williams's home by a separate deed of trust. The HELOC deed of trust expressly provided that "Trustor [Williams] irrevocably grants, transfers and assigns to Trustee, in trust and with power of sale, all of the real property in the City or Town of Vallejo, County of Solano," going on to identify her property by its street address.

In August 2016, Williams refinanced the Countrywide loan with New Penn. The amount of the refinance loan was $375,850. The HELOC remained.

In November 2017, Mortgage Electronic Registration Systems, Inc. filed an Assignment of Deed of Trust affecting the HELOC, assigning the deed of trust to the Bank of New York Mellon (Mellon) as successor trustee. In early 2018, Bank of America, N.A. (BANA), as attorney in fact for Mellon, recorded a substitution of trustee substituting MTC Financial Inc. (MTC) as trustee. And BANA was the loan servicing company for the HELOC.

Williams made payments on the HELOC until February or March of 2018, at which time, in her words, she "just felt like that home line of credit

2

was just bogus and I was going to let it go." And she stopped making payments.

Following Williams's decision, in April 2018, MTC recorded a "Notice of Default and Election to Sell Under Deed of Trust." Among other things, the notice of default provided in capitalized bold-face as follows: **"IMPORTANT NOTICE. IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOU PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION."** Williams received this notice.

On June 18, some two months after the notice of default was recorded, Williams called New Penn's customer service center, and talked with customer service representative Taniqua Jackson. During the call, Williams admitted she had stopped making payments on her HELOC, saying that she "just felt like that home line of credit was just bogus and [she] was going to let it go." Williams also told Jackson that BANA, the loan servicer, was calling repeatedly and threatening to foreclose on her property. Williams also said that she had been told by her loan broker (and others) to the contrary, that BANA would not be able to foreclose on her property.

Williams then asked Jackson whether BANA would foreclose on her property, stating that she, "just want[ed] to verify" that what her loan broker had told her was correct. Jackson replied that she did not know the answer, but would try to see if someone from New Penn's second lien department could speak to her about the issue. Jackson went off the line, later to return, to tell Williams that another representative said she had not seen a junior lienholder foreclose while the first lien was current, but that she did not know how BANA works in such circumstances.

Following this, Williams admitted to Jackson that she owed about $23,000 on the HELOC when she stopped paying. Then, after stating she did

not want to "wrap" the HELOC debt into the New Penn loan, Williams stated that she was going to continue to try to negotiate with BANA, but she wanted to "make sure that I'm not placing my house in jeopardy." Jackson responded as follows:

"TANIQUA JACKSON: Your home. Yes, ma'am. Yes, ma'am. So just keep in mind, she did tell me that she has never seen it happen. More than likely—

"SANDRA WILLIAMS: And I haven't either.

"TANIQUA JACKSON: Yeah. She said most of the time as long as you're current with your first lien, that she has never seen where they were able to take it because of the second lien. But then she did tell me, you know, kind of just keep correspondence with them or whatever. Because she don't know how their company works. . . ."

Jackson made no further comments about any HELOC foreclosure procedure, and the call ended.

On July 6, 2018, MTC recorded a Notice of Trustee's Sale, setting forth an estimated unpaid balance of $28,241.11. The first page of the notice stated in bold-faced text: **"YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED July 13, 2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER."**

On August 15, the date noticed for the trustee's sale, Williams's property was sold to a third party, Breckenridge Property Fund 2016 (Breckenridge). New Penn had no involvement with the HELOC loan

4

foreclosure, and it did not receive any of the proceeds or otherwise benefit from the foreclosure sale.

On August 16, the day after the foreclosure sale, Williams again called New Penn's customer service center and spoke with customer representative Amanda Perez. Williams explained her claimed situation relating to the HELOC, including that she could not refinance her home loan and HELOC together in a single loan because of the value of her home, so she made payments on both for two years. Williams then said, "after two years, I still owed $28,000. It's just ridiculous. [¶] So after trying to negotiate with those folks, I decided I was not going to pay it anymore. And I started writing letters, trying to figure out if there was a way we could negotiate something lower." Williams then referenced the August 15 sale and said: "Well, I forgot all about it. Because I'm thinking to myself, that's impossible. Because my primary lender is not them, my primary lender is New Penn Financial. So when all of this first started back in March, I called New Penn. I explained what I was doing. And, of course, they didn't say one way or the other what I should do. But I said would it put my first or primary lender—you all—in any kind of position where I would lose my home. And the loan officer said no. You know, no, because you keep paying us."[1]

Perez then conferred with an unidentified New Penn employee, who confirmed that Williams was not in default on her refinanced loan. And according to Perez, the second employee stated, "I was checking with my supervisor. She is saying even though the second mortgage went to foreclosure, the first one is still not in default. So nothing should be

---

[1] Williams also claimed in her declaration that she spoke with a New Penn representative in March 2018. There is no record of any such call taking place.

5

happening with that (indiscernible)." Perez told Williams that she, Perez, did not think BANA could take the property, because New Penn's 2018 refinance loan was the first lien, rather than the 2006 HELOC.

During the same call, Williams also admitted that she had spoken with a lawyer about the issue, telling Perez: "And before I called you guys, I actually called in a lawyer, a real estate lawyer. So I think I'm going to go another couple steps. But I still just wanted to make sure from you guys that what I've been told is still the truth, that there's nothing going on with my first and primary lender." Later, Williams admitted, "Because this lawyer, or whoever these people are that I was talking to earlier, they said oh no, they can go and take over your first. Really? They would be willing to (indiscernible) for $30,000? Are you kidding me? I said does that make sense? And he said, well—" The call concluded shortly thereafter.

**The Proceedings Below**

On December 17, 2018, representing herself, Williams filed a complaint naming three defendants: New Penn, BANA, and Breckenridge, the third-party buyer of the property. The complaint alleged 12 causes of action, styled as follows: "Violation of California Civil Code [section] 2924; Violation of California Civil Code [section] 2924[, subdivision] (j); Estoppel; Negligence; Fraudulent Misrepresentation; Negligent Misrepresentation; Declaratory Relief; Wrongful Foreclosure; Quiet Title; Slander of Title; Cancellation of Instruments; and Violation of Business and Professions Code [section] 17200, et al."[2]

---

[2] On April 2, 2019, judgment was entered for BANA, following its demurrer being sustained without leave to amend. And on April 11, 2019, Williams dismissed Breckenridge with prejudice. BANA and Breckenridge are not involved in this appeal.

On March 22, 2019, still representing herself, Williams filed a first amended complaint, removing the first Civil Code section 2924 cause of action.

On April 26, the Mellen Law Firm substituted in as attorney for Williams.

As pertinent here, New Penn filed a demurrer. In response, now represented by counsel, Williams represented she was abandoning seven of the causes of action, and was pursuing only four, those for: negligence, fraudulent misrepresentation, negligent misrepresentation, and violation of the Unfair Competition Law, Business and Professions Code section 17200 et seq.

Again, New Penn demurred, and Williams moved to file a second amended complaint. The trial court overruled the demurrer, but also denied Williams's motion to file a second amended complaint.

On December 6, New Penn answered the first amended complaint, and the case was at issue as to Williams's four causes of action.

On September 9, 2021, New Penn moved for summary judgment, or, in the alternative, summary adjudication. Based on the declarations and evidence, including the transcripts of the two calls Williams relied on to support her allegations, New Penn argued that none of the four causes of action had merit.

Williams opposed the motion, included within which opposition was her declaration containing assertions that contradicted the language contained in the transcripts, which declaration also added to the allegations in the first amended complaint.

Following New Penn's reply, the motion came on for hearing on December 7, prior to which the trial court issued a tentative ruling granting

the motion. The tentative ruling does not appear in the record on appeal. But it is referenced in the reporter's transcript on appeal and was addressed by counsel at the hearing.

Among other things, at the hearing the court noted that Williams's opposition presented no evidence she would have been able to cure the default, a fact Williams's attorney conceded. Instead, counsel argued that Williams was actively working on the default and seeking to negotiate with BANA, and that she could have continued those efforts if the home had not been sold. Responding, the trial court noted "these assertions do not demonstrate that the misrepresentations that you allege [were] a substantial factor in losing the property . . . . Those representations actually support an inference to the contrary." Finally, the court noted that Williams could not rely on any statement by any New Penn representative on the August 16 call, because by that time the trustee sale had already occurred.

At the close of the hearing, the trial court adopted the tentative ruling as the order of the court, and ruled that the motion for summary judgment was granted. The court then signed and returned the order submitted by New Penn, which order was filed on December 9. On January 28, 2022, Williams filed a notice of appeal, which checked that the appeal was from a "judgment after an order granting a summary judgment motion."

There is no judgment in the record, only the order, which is not appealable. (*Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1695.) However, as recently confirmed, "in the interest of judicial economy, we may construe the order sustaining the demurrer without leave to amend as a final appealable judgment. [Citation.]" (*Cardenas v. Horizon Senior Living, Inc.* (2022) 78 Cal.App.5th 1065, 1069; see generally *Vibert v. Berger* (1966)

8

64 Cal.2d 65, 67–68; *Los Altos Golf & Country Club v. County of Santa Clara* (2008) 165 Cal.App.4th 198, 202.)

That we do, and thus turn to the substance of the appeal.

## DISCUSSION

### Summary Judgment and the Standard of Review

"A party may move for summary judgment in an action or proceeding if it is contended that the action has no merit . . . ." (Code Civ. Proc., § 437c, subd. (a)(1) (Section 437c).) And summary judgment will be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Section 437c, subd. (c).)

A defendant "moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that [the defendant] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) And to prevail, a defendant must show that one or more elements of the challenged cause of action cannot be established or that there is a complete defense to it. (*Aguilar*, *supra*, 25 Cal.4th at p. 849; *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476–477.)

Our review is under well-settled principles: "On appeal '[w]e review a grant of summary judgment de novo; we must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. [Citations.]' (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) Put another way, we exercise our independent judgment, and decide whether undisputed facts have been established that negate plaintiff's claims. (*Romano v. Rockwell Internat., Inc.,* [(1996)] 14 Cal.4th [479,] 487.) As we put it in *Fisherman's Wharf Bay Cruise Corp. v.*

9

*Superior Court* (2003) 114 Cal.App.4th 309, 320: '[W]e exercise an independent review to determine if the defendant moving for summary judgment met its burden of establishing a complete defense or of negating each of the plaintiff's theories and establishing that the action was without merit.' (Accord, *Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972.)

"But other principles guide us as well, including that '[w]e accept as true the facts . . . in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn from them.' (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 67.) And we must ' "view the evidence in the light most favorable to plaintiff[] as the losing part[y]" and "liberally construe plaintiff['s] evidentiary submissions and strictly scrutinize defendant['s] own evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiff['s] favor." ' (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 96–97.)" (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 253–254.)

In addition to the above is the well-recognized admonition, set forth, for example, in *Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230 this way: "On review of a summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court. (*Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1140.) . . . '[D]e novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to

10

issues which have been adequately raised and briefed.' (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116.)"

**The Summary Judgment Was Proper**

As noted, Williams makes four arguments on appeal, the first of which is that the trial court's "order granting summary judgment is defective." The argument is 10-lines long, and cites to the language in section 437c, subdivision (g) that in an order granting summary judgment, the court must "specify the reasons for its determination."[3]

The argument is based on a less than candid treatment of the record. And it fails for several reasons, both and procedural and substantive.

We begin by noting that Williams's brief ignores several settled principles of appellate review, the most fundamental of which is that a judgment is presumed to be correct. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) "All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564), and any ambiguity in the record is resolved in favor of the appealed judgment or order. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631.)

Moreover, Williams bears the burden of overcoming the presumption of correctness and must provide an adequate record demonstrating the alleged error. (*Jameson v. Desta, supra*, 5 Cal.5th at pp. 608–609.) And failure to

---

[3] The actual language provides as follows: "Upon the grant of a motion for summary judgment on the ground that there is no triable issue of material fact, the court shall, by written or oral order, specify the reasons for its determination." The statute also provides that the order must specifically refer to the evidence proffered in support of and, if applicable, in opposition to the motion that indicates no triable issue exists.

11

provide a proper record requires that the issue be resolved against her. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296; *Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362 [judgment affirmed where appellant failed to present adequate record]; *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187 [argument on appeal forfeited where appellant limited clerk's transcript to selected excerpts, and failed to include reporter's transcript and exhibits].)

As noted above—and as the reporter's transcript confirms—the trial court issued a tentative ruling granting the motion for summary judgment. Williams failed to include that tentative ruling in the record on appeal, although the trial court adopted that tentative ruling as the order of the court. We have obtained that tentative ruling, and on our own motion augment the record to include it.

The tentative ruling is 46-lines long, consuming well over a page single-spaced. It cites to numerous undisputed facts in the record, to several declarations, and to cases supporting the various findings and conclusions—a comprehensive ruling indeed. We quote here, without all the citations, the pertinent parts of that tentative ruling:

"Defendant has demonstrated that plaintiff cannot establish one or more essential elements of plaintiff's third cause of action for negligence, fourth cause of action for 'fraudulent misrepresentation,' fifth cause of action for 'negligent misrepresentation,' and 11th cause of action for violation of the Unfair Competition Law. All of these causes of action rely on an alleged misrepresentation made by defendant's representative that Bank of America could not foreclose on its second deed of trust while plaintiff was current on her obligations to defendant. [Citation.] But plaintiff has failed to demonstrate that there is a triable issue regarding the detrimental reliance

12

on the misrepresentation that caused plaintiff's injury of losing her home at a foreclosure sale. It is undisputed that plaintiff defaulted on her Bank of America loan and Bank of America initiated foreclosure proceedings prior to the alleged misrepresentation by defendant's representative. [Citation.] It is undisputed that defendant did not foreclose on the property and defendant did not receive any funds or otherwise benefit from the foreclosure sale. [Citation.] It is undisputed that plaintiff had one telephone conversation with defendant's representative prior to the trustee's sale. [Citation.] During the June 18, 2018 call, defendant did not suggest, encourage, or advise plaintiff to refrain from curing her default of another lender's loan and, in fact, explicitly advised plaintiff to 'keep correspondence' with Bank of America to resolve the issue with the other lender. [Citation.] It cannot be reasonably inferred from anything in the transcript of the June 18, 2018 call that defendant intended or expected to induce inaction from the plaintiff by the misrepresentation or that plaintiff substantially changed her position in any way as a result of the misrepresentation. [Citation.] Additionally, there is no triable issue regarding causation because the harm alleged would have occurred without the alleged misrepresentation. [Citations.] The court notes that it is also undisputed that plaintiff had been told by an attorney that Bank of America could foreclose. [Citations.] Since plaintiff's UCL claim is predicated on the negligence and fraud allegations, summary judgment is appropriate for the derivative UCL claim as well. [Citation.]"

That ruling meets the requirements of section 437c, subdivision (g). (See *Barton v. Elexys Internat.* (1998) 62 Cal.App.4th 1182, 1194.)

Moreover, Williams's argument would fail because she made no objection at the time the trial court announced its intention to adopt the

13

tentative ruling, nor did she seek any clarification before filing her notice of appeal.  Thus, Williams waived any claim of error.

As the leading appellate commentary puts it, citing numerous cases, "Waiver:  Appellants may be held to have *waived* a claim of error either by affirmative conduct or by failure to take proper steps in the trial court to avoid or cure the error.  [Citations.]  [¶]  '[F]airness is at the heart of a waiver claim.  Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider . . . . *Bait and switch on appeal* not only *subjects the parties to avoidable expense*, but also *wreaks havoc on a judicial system* too burdened to retry cases on theories that could have been raised earlier.' [Citations.]" (Eisenberg, et al., Cal. Practice Guide:  Civil Appeals and Writs (The Rutter Group, 2022) ¶ 8:249, p. 8-187.)

*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247 involved an error in the polling of the jury, an error to which the party did not object prior to discharging the jury.  Speaking in the language of forfeiture, a companion to waiver, the Supreme Court held that error was forfeited by the failure to object, with this language:  "The forfeiture rule generally applies in all civil and criminal  proceedings.  [Citation.]  The rule is designed to advance efficiency and deter gamesmanship.  As we explained in *People v. Simon* (2001) 25 Cal.4th 1082 (*Simon*):  ' " ' "The purpose of the general doctrine of waiver [or forfeiture] is to encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had . . . ." ' [Citation.]  ' "No procedural principle is more familiar to this Court than that a *constitutional* right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine

14

it." . . .' [Citation.] [¶] . . . ' " 'The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them. If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal.' " ' [Citation.]" (Fn. omitted; [citations].)' [Citation.]" (*Keener v. Jeld-Wen, Inc.*, *supra*, 46 Cal.4th at pp. 264–265.)

Were all that not enough, we note that the California Constitution permits reversal of a judgment only if an error results in a miscarriage of justice (Cal. Const., art. VI, § 13), which Williams has not shown here. Similarly, California Code of Civil Procedure section 475 mandates that a court must "disregard any error, improper ruling, . . . or defect, in the pleadings or proceedings which, . . . does not affect the substantial rights of the parties," and further provides that "[n]o judgment, . . . shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial, . . ." and caused appellants "substantial injury," and "that a different result would have been probable" in the absence of such error. (*Ibid.*) No such circumstances are present here.

Williams's second, third, and fourth arguments are that the trial court erred because there were "disputed material facts." The second argument is essentially generic, setting forth some boilerplate principles of summary judgment law. The third argument addresses the two misrepresentation claims. And the fourth the UCL claim.

By way of brief background, New Penn presented the transcripts of the only two calls that occurred between New Penn representatives and Williams, the June 2018 call with Jackson and the August call with Perez.

15

New Penn also provided the documentation related to the HELOC loan, the purchase money loan, and the refinance loan, including the notice of default, the notice of sale, and the deed of trust.  Finally, New Penn presented Williams's admissions regarding the HELOC and the foreclosure proceedings.  This evidence was sufficient to show that none of Williams's causes of action had merit.

### *Negligence*

Williams makes no argument in her brief that her negligence cause of action has merit or that it was improperly summarily adjudicated in favor of New Penn.  It is fundamental that an appellant must present legal argument and authority on each point raised (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 721), and if an appellant fails to support a point with reasoned argument and citations to authority, we can treat the point as waived.  (*Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125; *In re A.C.* (2017) 13 Cal.App.5th 661, 672 [forfeiture].)

Beyond that, any claim for negligence would fail on the merits, on two separate bases.  The first is that a financial institution owes no duty of care to a borrower when the institution's involvement in the transaction does not exceed the scope of its conventional role as a mere lender of money. (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1098; *Wagner v. Benson* (1980) 101 Cal.App.3d 27, 35 ["Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender,' " quoting *Connor v. Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850, 864].)  The second is based on the California Supreme Court's recent holding in *Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 915, that the "economic loss doctrine" bars recovery in negligence for pure economic losses.

16

*Misrepresentation*

As to Williams's causes of action for fraud and negligent misrepresentation, she asserts that the court erred in granting summary judgment "because there were disputed material facts," going on to specifically argue that "appellant alleged, and the evidence demonstrates, actionable misstatements of past or present facts," and "a triable issue of fact exists regarding whether appellant's reliance was reasonable." Williams is wrong.

The elements of fraud are (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or "scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 974; CACI No. 1900.) Negligent misrepresentation does not require scienter or intent to defraud, but does require the remaining elements. (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 407–408; CACI No. 1903.)

Williams's claims fail, as she could not prove several of the required elements, beginning with the first—misrepresentation.

The rule is that to be actionable, a misrepresentation must be of an existing fact, not an opinion or prediction of future events. (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1469; *Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 769.) As Witkin states the rule, "*Representation About Future Event.* The representation must ordinarily be about past or existing facts; predictions about future events, or statements about future action by some third party, are deemed opinions, and not actionable fraud. (*Henry v. Continental Bldg. & Loan Assn.* (1909) 156 C[al]. 667, 680; [citation]; see *Borba v. Thomas* (1977) 70 Cal.App.3d 144, 152

17

[future action by third party].)"  (5 Witkin, Summary of Cal. Law (11th ed. 2017) Torts, § 892, p. 1221.)

The first amended complaint alleged that New Penn misrepresented to Williams that all BANA could do was place a lien on her property, and that BANA was without authority to conduct a foreclosure sale.  And in claimed support, the first amended complaint references misrepresentations that allegedly occurred in 2018, one supposedly in "March," and one on August 16. As shown by the transcripts, Williams's two communications contain far different language from that alleged in the first amended complaint.

As detailed above, in the June 18 call New Penn customer representative Jackson told Williams that she did not know the answer to her question, and then, after placing Williams on hold and speaking to another customer representative, relayed to Williams that "[s]he said basically she has never heard of that.  As long as you're current on your first, they can't take your home.  She said, but if she were you, you know, she don't kind of know how that company works or whatever.  But she said she's never seen it."  Jackson then reiterated, "So, just keep in mind, she did tell me that she has never seen it happen . . . .  She said most of the time as long as you're current with your first lien, that she has never seen where they were able to take it because of the second lien.  But then she did tell me, you know, kind of just keep correspondence with them or whatever.  Because she don't know how their company works. . . ."

The statements made by New Penn's customer representative Jackson were a restatement of a colleague's comments, which were nothing but a halting and qualified prediction of how BANA might act in the future.  Such statements cannot be actionable misrepresentation.

Here, there is no evidence that Jackson (or anyone at New Penn) held themselves out to be specifically qualified on the subject of foreclosure on a HELOC. To the contrary, Jackson admitted she was unfamiliar with the topic Williams raised, and her colleague's views were expressly couched in a lack of understanding as to how BANA may choose to operate under the circumstances—not to mention, included a warning to keep in communication with BANA for that very reason.

Williams also fails to show a triable issue of material fact as to another required element of misrepresentation—reasonable reliance.

The gravamen of Williams's claim is that she relied on the statements made by the customer representatives to her detriment, "as she failed to retain legal counsel in a timely manner, which would have resolved the matter earlier and resulted in saving . . . [Williams] from losing the subject property at a trustee's sale; and, she continued to make monthly mortgage payments to [New Penn] despite the sale having taken place and her imminent eviction from the subject property." Similarly, Williams's declaration in opposition to New Penn's motion asserted, however conclusorily: "But for the representations made to me, I could have taken alternative action to address the ongoing foreclosures. . . , and I was unaware that the information provided to me was incorrect and unreliable at the time that it was provided." This is insufficient.

*Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935 (*Wachovia*), a case relied on by the trial court in the tentative ruling, is illustrative. There, Wachovia was foreclosing on property owned by Jones and, according to Jones, during a telephone call with him promised it would move the noticed foreclosure sale date to June 18, 2009 (*id*. at pp. 940–941), but in fact re-noticed a new sale date for June 8. (*Ibid*.) Jones claims he relied on the oral

19

statement that the date was moved to the 18th, not the 8th, and as a result the property was sold before he arranged for the funds necessary to bring the loan current.

Wachovia moved for summary judgment, and in opposition Jones testified in his declaration that he was prepared to borrow funds from a third party, Marlin, to pay the entire amount of the loan if, at the final hour, Wachovia refused to postpone the June 18 sale. (*Wachovia*, *supra*, 230 Cal.App.4th at p. 942.) Similarly, Marlin testified he had told Jones he would do whatever was necessary to save his home from foreclosure, and represented further that he had the ability to pay off Jones's loan in full, and would have done so had Jones asked him. (*Ibid*.)

Despite the testimony from Jones and Marlin, the court agreed with Wachovia because Jones failed to show a substantial change in position based on the stated postponement. (*Wachovia*, *supra*, 230 Cal.App.4th at p. 948.) The court held that the false statement of Wachovia was not actionable because there was no reasonable reliance as a matter of law. (*Id.* at pp. 947–948.)

Indeed, the showing in this case is far less than the showing in *Wachovia*. Williams was in breach of her HELOC for months before contacting New Penn. She took no affirmative action to cure her default on the HELOC or repay or refinance that loan. New Penn in no way encouraged Williams's chosen course of action. Instead, Williams told New Penn's customer representative that she, "just felt like that home line of credit was just bogus and [she] was going to let it go." This is the course of action that Williams chose, months before contacting New Penn, and continued to pursue even after receiving the default notice. Williams's circumstances were the result of her own planned decision made well before she contacted New Penn

20

to ask questions about what possible impact her self-inflicted default would have on her refinance loan, and upon her home.

Williams's conclusion that, if not for New Penn's alleged representations, "clearly [Williams] would have taken necessary action to prevent the subject property . . . from being sold at a trustee sale," is unsupported by the evidence. Lest there be any doubt on this, we again quote this admission by Williams on the August 16 call: "So when all of this first started back in March, I called New Penn. I explained what I was doing. And, of course, [New Penn] didn't say one way or the other what I should do." Williams also admitted she received multiple warnings from BANA that the lender intended to foreclose, but chose to disbelieve and ignore those warnings. In short, at no point did anyone from New Penn ever encourage Williams to remain in default.

Finally, Williams cannot have relied on any statement made by a New Penn representative on the August 16 call, which was the day *after* the foreclosure sale occurred.

### *The UCL*

Williams's final argument is that "the trial court erred in granting summary judgment and/or adjudication as to appellant's California Unfair Competition Law, . . . claims because there were disputed material facts."

As to Williams's UCL claim, she contends that she has standing under the UCL because she lost her home as a direct result of reliance on New Penn's statements. As demonstrated above, the statements made were not actionable misstatements of fact, and the UCL claim thus lacks merit because there is no evidence of wrongful conduct by New Penn. It fails for other reasons as well.

21

*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497 (*Jenkins*), disapproved of on other grounds by *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, is persuasive. Like Williams here, plaintiff Jenkins attempted to assert a UCL violation, claiming her economic injury was the impending foreclosure of her home. (*Jenkins, supra,* 216 Cal.App.4th at p. 522.) The court rejected the argument, holding that although the loss of a home is an economic injury, that alleged loss was not linked to any pre-default conduct. And the court concluded that causation was lacking because post-default actions are not the cause of a foreclosure sale as a matter of law, saying this: "Importantly, Jenkins admits in both her SAC and opening brief that she defaulted on her loan. It is also indisputable Jenkins's default triggered the lawful enforcement of the power of sale clause in the deed of trust, and it was the triggering of the power of sale clause that subjected Jenkins's home to nonjudicial foreclosure. Moreover, Jenkins's SAC and opening brief acknowledge her default occurred *prior* to the six unlawful or unfair acts she alleges as the basis of her UCL action. As Jenkins's home was subject to nonjudicial foreclosure because of Jenkins's default on her loan, which occurred before Defendants' alleged wrongful acts, Jenkins cannot assert the impending foreclosure of her home (i.e., her alleged economic injury) was caused by Defendants' wrongful actions. Thus, even if we assume Jenkins's third cause of action alleges facts indicating Defendants' actions violated at least one of the UCL's three unfair competition prongs (unlawful, unfair, or fraudulent), Jenkins's SAC cannot show any of the alleged violations have a causal link to her economic injury." (*Jenkins*, at p. 523.)

Here, Williams concedes she defaulted on her loan, and she did not contact New Penn until after the notice of default had issued. And Williams

has never disputed the validity of the power of sale clause in the deed of trust. Her entire claim focuses only upon alleged post-default conduct by New Penn. And thus her UCL cause of action fails for this reason, for lack of standing as well as for lack of any unlawful conduct.

Finally, we note that while the scope of conduct covered by the UCL is potentially quite broad, its remedies are limited. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144.) No damages can be recovered (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266), and "prevailing plaintiffs are generally limited to injunctive relief and restitution." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 179.) Here, the undisputed facts show that New Penn took no part in the foreclosure sale, and obtained no money or other benefit from it. As such, there is no restitution available for Williams to recover.

## DISPOSITION

The judgment (order) is affirmed. New Penn shall recover its costs on appeal.

23

                             _____
                             Richman, Acting P.J.

We concur:

_____

Miller, J.

_____

Van Aken, J. *

*Williams v. New Penn Financial* (A164511)

     \*Judge of the San Francisco Superior Court, Judge Christine Van Aken, sitting as assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.